# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                    Plaintiff,

    v.                               Case No. 25-cv-51-pp

MATTHEW SCULLION, *et al.*,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS UNNECESSARY PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 10) AND SCREENING AMENDED COMPLAINT (DKT. NO. 9) UNDER 28 U.S.C. §1915A**

---

Plaintiff Jeff Poff, an individual incarcerated at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. On February 13, 2025, the court received the plaintiff's amended complaint. Dkt. No. 9. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service of the complaint or of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Because the court has not screened the original complaint or ordered service on any defendant, the plaintiff has the right to amend his complaint as a matter of course, without the court's permission. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 10, and screens the amended complaint, dkt. no. 9.

## I. Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 10)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 4, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $1.67. Dkt. No. 7. The court received that fee on April 11, 2025. The court will grant the plaintiff's first motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) and will deny as unnecessary his second motion for leave to proceed without prepaying the filing fee (Dkt. No. 10). The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.[1]

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or

---

[1] On May 2, 2025, the court received the plaintiff's request for clarification of whether the court received his initial partial filing fee payment in this case and his other pending cases. Dkt. No. 12. This order clarifies that on April 11, 2025, the court received the plaintiff's payment of the initial partial filing fee in this case and his five other pending cases.

employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B. <u>The Plaintiff's Allegations</u>

The amended complaint concerns events that allegedly occurred while the plaintiff was incarcerated at Wisconsin Secure Program Facility (WSPF). Dkt. No. 9 at ¶3. It names as defendants Lieutenants Matthew Scullion and Kolbo; Captains Taylor and Esser; Warden Gary Boughton; Deputy Warden Paula Stoudt; Security Director Jacob Cirian; Unit Manager Brown; Sergeants Mezzenette and Chad Winger; Corporal Gabriel Johnston; Health Services Unit (HSU) Manager Sheryl Kinyon; Doctor Justin Ribalt; institutional complaint examiners R. Boyer, E. Ray and J. Payne; Nurse Keith; "BWC," who the plaintiff says provided body cameras for the Department of Corrections (DOC) and defendant Johnston; and John Doe Correctional Officers. <u>Id.</u> at ¶¶4–19. The plaintiff sues all defendants in their individual capacities. <u>Id.</u> at p.12.

The plaintiff alleges that on October 20, 2022, Nurse Keith was evaluating him for chest pains, when suddenly defendant Johnston lifted him off his feet and slammed him against a wall. <u>Id.</u> at ¶20. He says that Johnston "begun to brutally [*sic*] assault him" by punching him in the lower back, kidneys, neck and head. <u>Id.</u> He says that Johnston assaulted him because he was on a five-day hunger strike, and the plaintiff had asked to speak with a supervisor when Nurse Keith refused to perform a hunger strike assessment as

DOC policy required. Id. The plaintiff alleges that "Responder's" came into the room, grabbed him, slammed him down onto the ground and "jumped on his lower back, and right knee." Id. at ¶21. The plaintiff says that he screamed out in pain and cut his right wrist on his handcuffs. Id. He says that Johnston had his body camera turned off, in violation of DOC policy. Id. at ¶22. The plaintiff says that he asked Johnston about his camera while he was on the ground. Id. Johnston did not respond but turned on his body camera. Id. The plaintiff says that Captain Taylor "was filming this whole incident on a regular video camera." Id. Nurse Keith refused to treat the plaintiff's injuries from the assault or treat his hunger strike, and the plaintiff "was escorted back to his cell." Id. at ¶23.

Once the plaintiff returned to his cell, he pressed his emergency call button and told Sergeant Mezzenette that he wanted staff to take pictures of his injuries. Id. at ¶24. Mezzenette responded that Lieutenant Scullion and Unit Manager Brown rejected plaintiff's request to have staff photograph his injuries. Id. A few hours later, Mezzenette came on the plaintiff's cell speaker and told the plaintiff that Scullion was ordering the plaintiff to pack his property and move to Range #4, where electronics were not allowed. Id. at ¶25. Mezzenette told the plaintiff that "he would loose [*sic*] his TV/radio for no reason at all." Id. The plaintiff says that he reluctantly prepared to move, when Scullion approached his cell and threatened to bring a "SERT Team" if the plaintiff refused to move "just as he had previously done so on 7/15/2022, and used exces[s]ive force, because in his words, he was tired of the plaintiff's

(B.S.)." Id. at ¶26. The plaintiff says that Scullion's threats were another instance of mistreatment or retaliation that "are now the subject of at least 3-other complaints." Id. at ¶27.

The plaintiff alleges that later the same day, after he moved to Range #4, Scullion ordered another incarcerated person to move into the cell next to the plaintiff "for the purpose's [*sic*] of falsifying testimony against the plaintiff on a[n] assault charge that Def. Scullion was attempting to frame him for." Id. at ¶28 (underlining omitted). The plaintiff says that he immediately wrote to Security Director Cirian and asked to be moved to another cell, but that Cirian did not respond. Id. The plaintiff says that he also wrote letters to Warden Boughton and Brown about Scullion, but that they also did not respond. Id.

The plaintiff says that on October 26, 2022, he received "the fabricated conduct report" that Corporal Johnston wrote against him "in retaliation . . . for pursuing" excessive force charges against Johnston and requesting that Johnston be drug tested because a previous employer allegedly fired Johnston "for this same exact allegations [*sic*] that the plaintiff was now accussing [*sic*] him off [*sic*]." Id. at ¶29 (underlining omitted). The plaintiff says that his allegations caused Johnston "to go on a (3-month's) [*sic*] so called med leave." Id. The plaintiff asked his prison advocate, Sergeant Winger, to have Johnston attend the plaintiff's disciplinary hearing for questioning because he wrote the conduct report. Id. at ¶30. He says that Cirian agreed to postpone the hearing until Johnston had returned from leave or to allow Johnston to file a written statement. Id. But the plaintiff says that Captain Esser overruled Cirian and

allowed the disciplinary hearing to go forward on December 1, 2022, without the plaintiff being able to question Johnston and without Johnston submitting a written statement. Id. at ¶31. Lieutenant Kolbo presided over the hearing, found the plaintiff guilty of the conduct report and sentenced him to 120 days' disciplinary separation. Id. The plaintiff says that on December 19, 2022, he appealed his conviction, but that Deputy Warden Stoudt rejected his appeal. Id. at ¶34.

The plaintiff says he "was made aware" after the hearing that the body cameras that Johnston and WSPF officers used "were having 'issues,' and all of the (BWC) body cams were now replaced." Id. at ¶32.[2] The plaintiff is "seeking damages from their company since the body cam's [*sic*] are there to protect staff, and inmates alike to reduce false alligation's [*sic*], and wrongdoing by staff, and in this case it was not done so." Id.

On December 27, 2022, the plaintiff filed a complaint about his conduct report and about the body cameras being defective. Id. at ¶35. Institutional complaint examiner Ray dismissed his complaint, and Boughton dismissed the plaintiff's appeal of Ray's decision. Id. On October 20, 2022, the plaintiff filed a separate complaint about the use of force and lack of medical treatment. Id. at ¶36. For the first time, he lists the other defendants who he says were involved in the use of force and inadequate medical treatment, but he does not detail their involvement. Id. Institutional complaint examiner Boyer dismissed the

---

[2] The plaintiff jumps backward from paragraph 31 to 22, then continues on from 22 for the remainder of the complaint. For ease of reference, the court has re-labeled the paragraphs as if they continued from 31 to 32 and so on.

complaint, and Boughton again dismissed the plaintiff's appeal. Id. The plaintiff filed a third complaint about staff not taking pictures of his injuries, but Boyer rejected this complaint and Boughton affirmed the decision. Id. at ¶37. The plaintiff filed a fourth complaint against HSU Manager Kinyon, Dr. Ribalt and HSU Manager Jamie Adams (who is not named as a defendant) for not responding to his requests for medical treatment, refusing to provide treatment for his lower back injuries and retaliating against him. Id. at ¶38. He says that institutional complaint examiner Payne dismissed this complaint and "closed" it a few weeks later. Id. He says that "[t]here is no evidence" showing that anyone "in the chain of comand [*sic*] that is mentioned in this complaint" investigated his complaint against medical staff, and they "should be all held responsible." Id. at ¶39 (underlining omitted).

The plaintiff claims that defendants Kolbo, Esser and Winger violated his rights under the Eighth and Fourteenth Amendments by placing him on disciplinary separation and then administrative confinement based on false allegations in the conduct report. Id. at ¶40. He claims that Boughton, Stoudt, Cirian, Brown, Taylor, Scullion and Winger failed to investigate his claims about his disciplinary conviction as DOC policies require and allowed him to be placed in administrative confinement based on the false allegations. Id. at ¶41. He claims that Johnston, Keith, Taylor, Jon Does, Esser, Scullion, Mezzenette, Cirian, Brown, Boughton, Fedie (who is not named as a defendant) and Stoudt either used excessive force or allowed excessive force to be used against the plaintiff to cause him harm and humiliate him in violation of the Eighth

Amendment. Id. at ¶42. He claims that Keith, Kinyon and Ribalt failed to provide him adequate medical treatment for injuries to his lower back and wrists that have caused him constant pain for three years, all in violation of the Eighth Amendment. Id. at ¶43. He claims that Johnston, Scullion, Brown, Mezzenette, Cirian, Fedie (who, again, is not named as a defendant) and Taylor falsified a conduct report "in concert with each other to cover up" Johnston's actions and to retaliate against the plaintiff. Id. at ¶44. Finally, he claims that "BWC Company" provided faulty equipment to WSPF, which risked his safety and security, caused his injuries and violated his rights. Id. at ¶45.

The plaintiff seeks a declaratory judgment that the defendants violated his rights; compensatory and punitive damages; an injunction ordering the DOC to send him to an outside specialist for proper medical treatment of his lower back and to provide him an extra mattress; and a protective order against defendant Scullion, who he says "has found his way to Waupun Corr Inst on (several) occasions to harass, and target the plaintiff." Id. at p.11–12. The plaintiff also asks the court to expunge the conduct report from his record "so he can gotto [sic] medium facility." Id. at 12.

C.    Analysis

The plaintiff's primary claim is that Johnston and other unspecified officers (the "responder's," as the plaintiff calls them) used excessive force during his medical visit with Nurse Keith on October 20, 2022. The court analyzes these allegations under the Eighth Amendment, which protects incarcerated persons from cruel and unusual punishments. See generally

9

<u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)). An Eighth Amendment claim consists of an objective and subjective component. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). In the context of a claim of excessive force, the plaintiff must allege both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" <u>Hudson</u>, 503 U.S. at 8 (quoting <u>Wilson</u>, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u> at 6 (citing <u>Whitley</u>, 475 U.S. at 320–21).

The plaintiff alleges that while he was seeing Nurse Keith for a medical appointment, Johnston slammed him into a wall and assaulted him without warning because the plaintiff was on a hunger strike and asked to speak with Keith's supervisor. He says that the "responder's" then entered the room and continued the assault. These allegations suggest that Johnson and the others had no good faith reason to apply force and did so maliciously and to cause the plaintiff harm. These allegations are sufficient to allow the plaintiff to proceed on an Eighth Amendment claim against Johnston.

These allegations also could be enough to allow the plaintiff to proceed against other defendants. But the amended complaint does not make clear who else was involved in this alleged assault. The plaintiff says that Taylor was

recording the incident but did not use force. Nonetheless, these allegations are sufficient to state a claim against Taylor as a bystanding officer who failed to intervene and stop Johnston's assault. See Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017) (noting that prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent).

The amended complaint does not state a claim of excessive force against any other officer. The plaintiff does not say who else was involved in the assault, alleging only that "responder's" aided Johnston. The plaintiff later says that he filed an institutional complaint about the use of force, and he lists several other defendants who were involved. In his summary of claims, the plaintiff again lists defendants who he says were involved, including one (Fedie) that he does not name as a defendant. Dkt. No. 9 at ¶42. But the amended complaint nowhere states any *allegations* describing what any of these people did to violate the plaintiff's rights or how they were personally involved in the alleged use of force. The plaintiff cannot rely on "vague references" to a group of defendants "without specific allegations tying the individual defendants to the alleged unconstitutional conduct." Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008). Merely listing these defendants without any allegations describing how they personally violated his rights is not enough to state a claim against any of them. Id.; see Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003). The court will allow the plaintiff to proceed on this Eighth Amendment claim against only defendants Johnston and Taylor.

The plaintiff next alleges that defendants Mezzenette, Scullion and Brown refused to allow staff to take pictures of his injuries after the assault. Although the plaintiff may have wanted his injuries photographed to use as evidence in this lawsuit, he does not have a constitutional right to have his injuries photographed. He does not allege that staff tried to keep him from accessing the court by denying him the photographs. Nor does he suggest that without these photographs, he will be unable to prove his claims. The plaintiff also does not allege that these defendants were involved in the use of force; he says only that they refused to allow photos of his injuries *after* the assault. Because the plaintiff does not allege that Mezzenette, Scullion or Brown did or failed to do anything that violated his rights related to the use of force, he does not state claim against them. See Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021)) ("To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right.").

The plaintiff next claims that Scullion forced him to move to another cell where he would lose his television and radio because the cell unit did not allow electronics. He says that Scullion threatened to bring an extraction team to move the plaintiff, which he apparently had done months earlier. The plaintiff says that Scullion then moved another incarcerated person into the cell next to the plaintiff to frame him for a different assault charge as part of a continued campaign of harassment, retaliation and targeting. The plaintiff does not have a constitutional right to be assigned to a particular cell or unit, so he cannot state

a claim about his forced move to a different cell. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976); DeTomaso v. McGinnis, 970 F.2d 211, 212 (7th Cir. 1992). And any claim he seeks to bring about his television or radio—if he did end up losing those electronics—must be brought in state court. See Morris v. Scott, 840 F. App'x 14, 15 (7th Cir. 2021); Cole v. Litscher, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) (citing Wis. Const. art. I, §9; Wis. Stat. §§810 and 893).

The plaintiff says that Scullion took these actions to retaliate against him, but he has not alleged sufficient facts to state a claim of retaliation. To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). The plaintiff has not described any "protected activity" he engaged in that led Scullion to move his cell assignment, such as filing a previous complaint or lawsuit against Scullion. He mentions Scullion's previous conduct and an assault charge that Scullion sought to pin on the plaintiff. He says that Scullion moved another incarcerated person next to the plaintiff to try to frame him for that assault. But the plaintiff does not say what came of those assault charges or whether whatever happened was related to his protected activity. He mentions other complaints and lawsuits he has filed against Scullion. But the court knows (because the suits are pending in this court) that the plaintiff brought those lawsuits recently and *after* Scullion's alleged mistreatment. Scullion could not have moved the plaintiff in retaliation

for protected conduct in which the plaintiff had not yet engaged. The plaintiff alleges no facts that allow the court to infer that Scullion acted in retaliation for the plaintiff's previous protected conduct involving Scullion.

The plaintiff next claims that various medical staff failed to provide him proper medical treatment. He says that Nurse Keith did not properly assess him during his hunger strike, and he claims that Keith, Kinyon and Ribalt did not treat his lower back and wrist injuries. The court analyzes allegations regarding the denial of proper medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The amended complaint does not state a claim against Keith related to the plaintiff's hunger strike. The plaintiff says that he was on a hunger strike for only five days, and that defendant Keith failed to assess his health as DOC

policy requires. But the plaintiff provides no specifics as to his condition when he saw Keith. "Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death." Owens v. Hinsley, 635 F.3d 950, 955 (7th Cir. 2011) (citing Freeman v. Berge, 441 F.3d 543, 546–47 (7th Cir. 2006)). But if the incarcerated person is suffering from only "weight loss and temporary discomfort . . . then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." Id. (citing Freeman, 441 F.3d at 547; Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005)). The plaintiff does not say whether he lost weight during his hunger strike, whether his condition had deteriorated or whether he faced serious injury or death. If he only lost weight or felt uncomfortable from not eating, that would not be enough to state an Eighth Amendment claim. The minimal detail in the plaintiff's allegations related to his hunger strike do not suffice to state a claim that Keith violated his rights by not assessing his condition.

The amended complaint also does not state a claim against Keith, Kinyon or Ribalt related to the plaintiff's back or wrist injuries. The plaintiff alleges little about these injuries that would allow the court to find that they were "objectively serious." He does not describe his injuries other than saying that he has remained in pain for years because of them, which might be enough to satisfy the objective component. See Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). But even if that were enough, the amended complaint alleges no facts showing that Keith, Kinyon or Ribalt knew of and disregarded the

plaintiff's pain or provided him inadequate treatment for his injuries. The plaintiff alleges that Keith did not treat his injuries immediately after the assault, but he does not say what his injuries were at the time, explain the symptoms that Keith allegedly ignored or provide any detail about his interaction with Keith or Keith's inaction.

The amended complaint alleges nothing at all against Kinyon or Ribault. Much like the plaintiff's unsupported claim against the "responder's," the amended complaint does not even mention Kinyon or Ribault until the plaintiff's summary of his grievances and claims, where for the first time he says that they denied him medical treatment and did not respond to his medical requests. But the plaintiff does not say when he saw or wrote to either of those defendants (if he ever did), he does not describe the injuries he asked them to treat or provide any information about his visit or visits with them. He also again lists a defendant who he did not name elsewhere in the amended complaint. See Dkt. No. 9 at ¶38 (listing Kinyon, Ribalt and "HSU Manager Jamie Adams" as subjects of an institutional complaint about retaliation). As the court explained above, the plaintiff cannot simply list defendants and seek to hold them liable without alleging what those persons specifically did or failed to do that violated his rights. See Grieveson, 538 F.3d at 778; Alejo, 328 F.3d at 936. The amended complaint contains no facts from which the court can infer that any medical defendant was aware of the plaintiff's objectively serious injuries and disregarded his need for treatment or provided inadequate treatment for those injuries. The court will dismiss these defendants.

The plaintiff also has not stated a claim against Boughton, Cirian or Brown. He alleges that he wrote to these defendants about Scullion's alleged harassment, but that none of them responded. The plaintiff has not alleged that these defendants were personally involved in the alleged harassment or in any other unconstitutional conduct. They cannot be held liable for their "inaction following receipt of a complaint about someone else's conduct." Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428–29 (7th Cir. 2017) (warden who "brushed off [incarcerated person's] complaints, leaving them to be handled through the chain of command" not liable under §1983). Even if these defendants had an obligation to step in and correct unlawful behavior, the court has explained above that Scullion's actions did not violate the plaintiff's rights. That means there was no conduct that Boughton, Cirian or Brown can be held liable for failing to intervene and stop. See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

The plaintiff alleges that Johnston and others wrote a fabricated conduct report against him in retaliation for complaining about the use of excessive force on October 20, 2022. The plaintiff has not alleged any facts explaining how anyone other than Johnston was involved in this conduct report, so the court will focus on the plaintiff's claim as alleged against Johnston. The plaintiff had a protected constitutional right to file a grievance against Johnston for his alleged use of excessive force. See Daugherty, 906 F.3d at 610. "Issuing false and unjustified disciplinary charges can amount to a violation of substantive due

process if the charges were in retaliation for the exercise of a constitutional right." Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994) (citing Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988)). Based on these decisions, the amended complaint may allege enough to state a due process claim against Johnston for filing the retaliatory and false conduct report against the plaintiff. But the plaintiff is barred from proceeding on this claim because he also says that he was found guilty of the conduct alleged in that report, and that Stoudt upheld his conviction on appeal. An incarcerated person may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside. See Edwards v. Balisok, 520 U.S. 641, 646 (1997); Heck v. Humphrey, 512 U.S. 477, 486 (1994). That includes convictions and sentences "arising out of prison disciplinary proceedings." Olson v. Humphreys, Case No. 07-C-682, 2007 WL 2570231, at *3 (E.D. Wis. Aug. 30, 2007) (citing Edwards, 520 U.S. at 643, 645). If successful, the plaintiff's due process claim that Johnston falsified his conduct report would necessarily call into question the validity of his disciplinary conviction. That means that he cannot proceed on a claim related to the allegedly false conduct report unless and until he can show that his disciplinary conviction based on that report has been invalidated. Because the amended complaint says otherwise, the plaintiff may not proceed on this due process claim against Johnston or any defendant.

The plaintiff also may not proceed on any other claim related to his disciplinary proceedings or conviction. He first alleges that Captain Esser

overruled Cirian and allowed his proceedings to go forward without Johnston's testimony or written statement. Even assuming this could have violated the plaintiff's right to call witnesses in his defense or to have a written statement from Johnston, see Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974), the plaintiff is barred from proceeding on this claim because, as the court just explained, a judgment on the merits of that claim would affect the validity of his disciplinary conviction, which has not been set aside. See Edwards, 520 U.S. at 643, 645; Olson, 2007 WL 2570231, at *3. The plaintiff seeks to proceed against Lieutenant Kolbo for his involvement, but he alleges only that Kolbo presided over the hearing. He has not alleged that Kolbo was not an impartial decisionmaker (to which he was entitled). See Perotti v. Marberry, 355 F. App'x 39, 43 (7th Cir. 2009) (citing Wolff, 418 U.S. at 571). And the court will not presume that Kolbo did not "properly discharge [his] duties" as disciplinary hearing officer. Higgason v. Lemmon, 6 F. App'x 433, 435 (7th Cir. 2001) (citing Bracy v. Gramley, 520 U.S. 899, 909 (1997)). The plaintiff also sues Sergeant Winger, but he alleges only that Winger was his advocate at the hearing. He has not alleged that Winger violated his rights while assisting him with his disciplinary hearing. Finally, the plaintiff alleges that Deputy Warden Stoudt denied his appeal of his disciplinary conviction. He does not allege that Stoudt disregarded evidence or unfairly denied his appeal. But even if he had, the plaintiff does not have a due process right to appeal his prison disciplinary conviction. See Wolff, 418 U.S. at 564–66; Jones v. Brown, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003); see also Lowe v. Stockey, 36 F. App'x 353, 360 (10th

Cir. 2002) (citing <u>Wolff</u>, 418 U.S. at 564–66) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal.").

The plaintiff also may not proceed on a claim against defendants Ray, Payne or Boyer for dismissing or denying his institutional complaints. Incarcerated persons have no federal right to meaningful review of their grievances, including an investigation into their allegations. See <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996); <u>Steinke v. Dittmann</u>, Case No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020). The plaintiff cannot proceed on a claim against the complaint examiners for how they allegedly handled or mishandled his grievances (or against Boughton for dismissing his appeals). See <u>Owens</u>, 635 F.3d at 953.

The plaintiff seeks to sue "BWC Company," which he says is the provider or manufacturer of body-worn cameras to the DOC. He says the camera Johnston was wearing was faulty, which put his safety at risk and led to his injuries from Johnston's use of force. Even if these allegations were sufficient to state a plausible claim against BWC Company, the plaintiff cannot sue a private company under §1983. He may bring a claim under §1983 only against state actors. See <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988). The fact that it provided cameras to state prisons does not convert the private maker of body-worn cameras into a state actor for purposes of §1983. See <u>Steading v. Thompson</u>, 941 F.2d 498, 499 (7th Cir. 1991) (citing <u>Rendell–Baker v. Kohn</u>, 457 U.S. 830, 840–41 (1982)) ("A private firm does not become a state actor by selling its

products to the government."). The court will not allow the plaintiff to proceed against BWC Company.

To the extent that the plaintiff seeks to proceed on allegations that the defendants violated various prison policies, he does not state a claim. Section 1983 protects against constitutional violations; it does not protect against violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff may not proceed on a claim related to any prison officials' alleged violations of DOC policy.

Finally, the plaintiff is not entitled to much of the relief he seeks. The plaintiff may seek damages, but he also seeks a declaratory judgment that the defendants violated his rights. The plaintiff is not entitled to declaratory relief because he no longer is at WSPF and has not alleged that the defendants continue to violate his rights. See Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The plaintiff also cannot seek injunctive relief against any defendant because he sues the defendants in their individual capacities only. "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). The plaintiff also asks the court to expunge the conduct report filed against him, but he cannot seek this relief under §1983. The proper mechanism for seeking expungement of the conduct report is a petition for a

writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)).

To summarize, the plaintiff may proceed on an Eighth Amendment claim of excessive force against defendant Johnston and an Eighth Amendment claim for failure to intervene against defendant Taylor. He may proceed against Johnston and Taylor in their individual capacities for damages only. He may not proceed on any other claims or against any other defendants, and he may not seek any other relief.

## III. Conclusion

The court **GRANTS** the plaintiff's first motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's second motion for leave to proceed without prepaying the filing fee because it is unnecessary. Dkt. No. 10.

The court **DISMISSES** defendants Matthew Scullion, Lieutenant Kolbo, Captain Esser, Gary Boughton, Paula Stoudt, Jacob Cirian, Unit Manager Brown, Sergeant Mezzenette, Chad Winger, Sheryl Kinyon, Dr. Justin Ribalt, R. Boyer, E. Ray, J. Payne, Nurse Keith, BWC Company, the Jon Doe (or John Doe) defendants and Captain Fedie.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint (Dkt. No. 9) and this order to the Wisconsin Department of Justice for service on defendants Gabriel Johnston and Captain Taylor at

WSPF. Under the informal service agreement, the court **ORDERS** those defendants to respond to the amended complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.33** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[3] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 23rd day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**